

Office of the Clerk
**United States Court of Appeals for the Ninth Circuit**
Post Office Box 193939
San Francisco, California 94119-3939
415-355-8000

Molly C. Dwyer
Clerk of Court

June 19, 2013

---

No.:        13-72158
Short Title:  Dominic Dean Adams v. USA

---

Dear Petitioner/Counsel

This is to acknowledge receipt of your Application for Permission to File a Second or Successive Habeas Corpus Petition.

All subsequent letters and requests for information regarding this matter will be added to your file to be considered at the same time the cause is brought before the court.

The file number and the title of your case should be shown in the upper right corner of your letter to the clerk's office. All correspondence should be directed to the above address pursuant to Circuit Rule 25-1.

No. _____

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DOMINIC DEAN ADAMS, Defendant-Movant,

vs.

UNITED STATES OF AMERICA, Plaintiff-Respondent.

On Application for Authorization to Proceed Before the
United States District Court for the District of Arizona
D.C. No. 4:07-cr-1663-TUC-CKJ
D.C. No. 4:08-cr-340-TUC-RCC

## APPLICATION FOR AUTHORIZATION TO FILE A SECOND OR SUCCESSIVE MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255

JON M. SANDS
Federal Public Defender

KEITH J. HILZENDEGER
Research & Writing Specialist
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
(602) 382-2700   voice
(602) 382-2800   facsimile
keith_hilzendeger@fd.org
*Attorneys for Movant Adams*

Dominic Dean Adams is a federal prisoner sentenced to 43 years in prison stemming from a homicide he committed when he was 15 years old. Under the Supreme Court's decision in *Miller v. Alabama*,[1] this sentence is unconstitutional because the sentencing judge lacked the discretion to impose a sentence that carried a meaningful possibility of release within Mr. Adams's expected lifetime. Because Mr. Adams has previously sought postconviction relief from his conviction and sentence, he now seeks authorization from this Court to litigate his *Miller* claim before the district court.[2]

## TECHNICAL INFORMATION

1. Mr. Adams is challenging only the sentence imposed in the following cases:

   No. 4:07-cr-1663-TUC-CKJ (D. Ariz.)
   No. 4:08-cr-340-TUC-RCC (D. Ariz.)

2. Mr. Adams was convicted in the United States District Court for the District of Arizona.

3. Former Chief Judge John M. Roll imposed the sentence in these cases on June 4, 2009.

4. Mr. Adams has previously filed for relief under 28 U.S.C. § 2255.

---

[1] 132 S. Ct. 2455 (2012).
[2] *See* 28 U.S.C. § 2255(h).

    a. Mr. Adams filed the motion in the United States District Court for the District of Arizona

    b. The motion was docketed as Nos. 4:10-cv-458-TUC-AWT and 4:10-cv-473-TUC-AWT.

    c. The district court determined that these motions were deemed filed on July 8, 2010.[3]

5. The district court parsed Mr. Adams's *pro se* motion to contain four claims of ineffective assistance of counsel: (1) counsel rendered ineffective assistance in recommending that Mr. Adams enter into a plea agreement with the government;[4] (2) counsel incorrectly told Mr. Adams that the sentence he faced was between 20 and 28 years in prison;[5] (3) counsel allegedly failed to request transfer and competency hearings;[6] and (4) counsel ineffectively advised Mr. Adams to plead guilty to assaulting a federal officer because the victims of those counts were not "federal officers" under 18 U.S.C. § 1114.[7]

---

[3] *See* Order Denying § 2255 Motions at 5, *United States v. Adams*, No. 4:10-cv-458-TUC-AWT (D. Ariz. filed Jan. 7, 2013) (citing *Campbell v. Henry*, 614 F.3d 1056, 1058–59 (9th Cir. 2010)).

[4] *Id.* at 8.

[5] *Id.* at 9–10.

[6] *Id.* at 10.

[7] *Id.* at 11.

6. The district court denied the petition without a hearing under 28 U.S.C.
   § 2255(b).

7. The district court found that the petition was timely filed after granting Mr.
   Adams sufficient equitable tolling,[8] declined to enforce the collateral-attack
   waiver in the plea agreement to bar Mr. Adams's ineffective-assistance
   claims,[9] and denied all four claims on the merits.[10] The district court also
   denied Mr. Adams a certificate of appealability.[11]

8. The district court entered judgment against Mr. Adams in his § 2255 case on
   January 7, 2013.

9. Mr. Adams did not appeal the district court's denial of his § 2255 motions.

10. **Index of Required Attachments.** Pursuant to 9th Cir. R. 22-3(a) and (b), Mr.
    Adams is attaching to this request for authorization (1) a copy of the § 2255
    motion that he seeks authorization to file and (2) a copy of the district
    court's order denying his first § 2255 motion.

---

[8] *Id.* at 4–6.
[9] *Id.* at 6–7.
[10] *Id.* at 7–12.
[11] *Id.* at 14.

# GROUNDS FOR AUTHORIZATION

Under the Supreme Court's decision in *Miller v. Alabama*,[12] the Eighth Amendment requires a trial judge sentencing a juvenile homicide offender to have the discretion to impose a sentence that carries a meaningful possibility of release within the juvenile's expected lifetime.[13] *Miller* is a newly decided, retroactively applicable rule of law that did not exist in 2009 when Mr. Adams was sentenced. Because Mr. Adams should have an opportunity to be sentenced by a district judge whose discretion is unfettered in the way *Miller* requires, he now asks this Court to authorize him to file a second or successive § 2255 motion in order to obtain a new sentencing hearing.

1.    ***Miller* has been "made retroactive to cases on collateral review by the Supreme Court," and thus Mr. Adams can make a prima facie case for authorization to proceed in district court.**

Before Mr. Adams may proceed in district court, this Court must certify that his proposed second or successive § 2255 motion contains "a new rule of constitutional law, made retroactive to cases on collateral review, that was previously unavailable."[14] This Court need only determine that Mr. Adams has made a prima facie showing that he is relying on a retroactively applicable new rule

---

[12] 132 S. Ct. 2455 (2012).
[13] *See id.* at 2469.
[14] 28 U.S.C. § 2255(h)(2).

4

of law.[15] Because *Miller* has been made retroactive to cases on collateral review, this Court should authorize Mr. Adams to proceed in district court on the attached proposed § 2255 motion.

The Supreme Court can make a new rule of constitutional law apply retroactively to cases on collateral review in either of two ways. First, the Court can expressly hold that the new rule applies retroactively.[16] Second, the Court can declare that certain types of rules apply retroactively, and then later articulate a holding that is of the proper type.[17] *Miller* has been made retroactive in the second way.

The Supreme Court has held that Eighth Amendment-based categorical exclusions from certain types of punishment apply retroactively to cases on collateral review.[18] In *Miller* the Supreme Court then said that it was articulating a categorical exclusion for juvenile homicide offenders from the punishment of life in prison without the possibility of parole.[19] Thus *Miller* has been made retroactive to

---

[15] *See United States v. Lopez*, 577 F.3d 1053, 1061 (9th Cir. 2009).

[16] *See Tyler v. Cain*, 533 U.S. 656, 663 (2001).

[17] *See id.* at 666, 668–69 (O'Connor, J., concurring).

[18] *See Penry v. Lynaugh*, 492 U.S. 302, 329–30 (1989) (citing *Teague v. Lane*, 489 U.S. 288 (1989)), *overruled on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002).

[19] *See* 132 S. Ct. at 2469; *see also Graham v. Florida*, 130 S. Ct. 2011, 2022–23 (2010) (characterizing the holding as a "categorical challenge to a term-of-years sentence").

cases on collateral review, and this Court may authorize Mr. Adams to proceed in

district court on his *Miller* claim.[20]

**2.    The term-of-years sentence imposed here is the functional equivalent of a life sentence because it exceed Mr. Adams's projected life expectancy.**

The holding in *Miller* does not apply solely to sentences denominated "life

without parole." Rather, it applies to any sentence that forecloses a "meaningful

possibility to obtain release based on demonstrated maturity and rehabilitation."[21]

This Court should recognize, as the California Supreme Court has recognized, that

lengthy sentences that exceed a person's life expectancy are the functional

equivalent of a sentence formally denominated "life without parole."[22] Here, Mr.

Adams's 43-year sentence is the functional equivalent of a sentence of life without

parole. In order to "reflect life expectancy of federal criminal defendants more

precisely…, life sentences and all sentences above 470 months are now capped at

470 months" by the U.S. Sentencing Commission.[23] Mr. Adams's 516-month (43-

year) sentence exceeds this projected life expectancy. It is therefore the functional

---

[20] *See Tyler*, 533 U.S. at 666; *accord In re Sparks*, 657 F.3d 258, 262 (5th Cir. 2011) (*Graham* claim qualifies for authorization).
[21] *Graham*, 130 S. Ct. at 2030 (cited in *Miller*, 132 S. Ct. at 2469).
[22] *See People v. Caballero*, 282 P.3d 291, 295 (Cal. 2012).
[23] *See* U.S. Sentencing Commission, *2011 Sourcebook of Federal Sentencing Statistics*, Appendix A, at 2.

equivalent of a sentence of life without parole, and was imposed in violation of

*Miller*.

## CONCLUSION

For the foregoing reasons, Mr. Adams's sentence violates the Eighth

Amendment as explained in *Miller*. This Court should therefore authorize him to

proceed in the district court on the attached § 2255 motion in an effort to obtain a

new sentencing hearing.

Respectfully submitted:                    June 19, 2013.

JON M. SANDS
Federal Public Defender

*s/Keith J. Hilzendeger*
KEITH J. HILZENDEGER
Research & Writing Specialist
*Attorney for Movant Adams*

7

# CERTIFICATE OF SERVICE

I certify that on June 19, 2013, I caused the foregoing motion to be electronically filed with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate CM/ECF system. I further certify that not all participants in this case are registered CM/ECF users linked to this case. Therefore, I have served the following other participants by first-class mail, postage prepaid:

Sandra Marie Hansen
Assistant United States Attorney
405 West Congress Street, Suite 4800
Tucson, Arizona 85701

 *s/Keith J. Hilzendeger*
KEITH J. HILZENDEGER
Research & Writing Specialist
*Attorney for Movant Adams*

8

JON M. SANDS
Federal Public Defender
KEITH J. HILZENDEGER (Ariz. Bar No. 023685)
Research & Writing Specialist
850 West Adams Stret, Suite 201
Phoenix, Arizona 85007
(602) 382-2700   voice
(602) 382-2800   facsimile
keith_hilzendeger@fd.org
*Attorneys for Movant Adams*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. |
| Plaintiff, | Criminal Nos. 4:07-cr-1663-TUC-CKJ; 4:08-cr-340-TUC-RCC |
| vs. | |
| DOMINIC DEAN ADAMS, | **Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody** |
| Defendant-Movant. | |

Dominic Dean Adams is a federal prisoner sentenced to 43 years in prison stemming from a homicide he committed when he was 15 years old. Under the Supreme Court's decision in *Miller v. Alabama*,[1] this sentence is unconstitutional because the sentencing judge lacked the discretion to impose a sentence that carried a meaningful possibility of release within Mr. Adams's expected lifetime. Because *Miller* is a retroactively applicable new rule of law that renders his sentence invalid, Mr. Adams now asks the Court to vacate his sentence and convene a new sentencing hearing in front of a sentencing judge with the unfettered discretion required by *Miller*.

---

[1] 132 S. Ct. 2455 (2012).

1

## TECHNICAL INFORMATION

2

1.  Name and location of court that entered the judgment of conviction:

3

4      United States District Court
       District of Arizona
5      405 West Congress Street
       Tucson, Arizona 85701
6

7   2.  Criminal docket numbers:

8      4:07-cr-1663-TUC-CKJ
       4:08-cr-340-TUC-RCC
9

10  3.  Date of judgment of conviction:          June 4, 2009

11

4.  Mr. Adams was convicted in No. 07-1663 of two counts of second-degree
12

13     murder, in violation of 18 U.S.C. § 1111(a). In No. 08-340, he was convicted

14     of two counts of assault on a federal officer, in violation of 18 U.S.C.

15     § 111(a)(1) and (b).

16

5.  The sentence imposed in No. 07-1663 was 396 months. The sentence
17

18     imposed in No. 08-340 was 120 months. These sentences were ordered to

19     run consecutively.

20

6.  Mr. Adams pleaded guilty pursuant to a plea agreement in both cases.
21

22  7.  Mr. Adams did not appeal from the judgment of conviction.

23

8.  Mr. Adams did not file a petition for a writ of certiorari in the Supreme
24

       Court.
25

26  9.  Mr. Adams has previously filed a motion to vacate sentence under § 2255 in

27     these cases.

28

a. The motion was deemed filed on July 8, 2010.[2]

b. It was filed in the United States District Court for the District of Arizona.

c. It was a motion to vacate sentence under 28 U.S.C. § 2255.

d. It was docketed as No. 4:10-cv-458-TUC-AWT and No. 4:10-cv-473-TUC-AWT.

e. This Court denied the motion on January 7, 2013.

f. This Court parsed Mr. Adams's *pro se* motion to contain four claims of ineffective assistance of counsel: (1) counsel rendered ineffective assistance in recommending that Mr. Adams enter into a plea agreement with the government;[3] (2) counsel incorrectly told Mr. Adams that the sentence he faced was between 20 and 28 years in prison;[4] (3) counsel allegedly failed to request transfer and competency hearings;[5] and (4) counsel ineffectively advised Mr. Adams to plead guilty to assaulting a federal officer because the victims of those counts were not "federal officers" under 18 U.S.C. § 1114.[6]

10. Mr. Adams was *pro se* before this Court in his prior § 2255 proceedings. Having been denied a certificate of appealability, he did not appeal this Court's adverse decision.

---

[2] *See* Order Denying § 2255 Motions at 5, *United States v. Adams*, No. 4:10-cv-458-TUC-AWT (D. Ariz. filed Jan. 7, 2013) (citing *Campbell v. Henry*, 614 F.3d 1056, 1058–59 (9th Cir. 2010)).

[3] *Id.* at 8.

[4] *Id.* at 9–10.

[5] *Id.* at 10.

[6] *Id.* at 11.

3

11. A search of the national PACER database reveals that Mr. Adams does not have pending before any federal court any motion, petition, or appeal challenging the judgment imposed in these cases.

12. Mr. Adams has no sentence left to serve after the sentences imposed in these cases.

13. This motion is being filed within one year of the Supreme Court's decision in *Miller v. Alabama*. This motion is timely filed under 28 U.S.C. § 2255(f)(3).

## GROUND FOR RELIEF

Under the Supreme Court's decision in *Miller v. Alabama*,[7] the Eighth Amendment requires a trial judge sentencing a juvenile homicide offender to have the discretion to impose a sentence that carries a meaningful possibility of release within the juvenile's expected lifetime.[8] The sentence imposed in this case does not satisfy this requirement. *Miller* is a newly decided, retroactively applicable rule of law that did not exist in 2009 when Mr. Adams was sentenced. Because Mr. Adams should have an opportunity to be sentenced by a district judge whose discretion is unfettered in the way *Miller* requires, he now asks this Court to vacate the sentence and convene a new sentencing hearing.[9]

---

[7] 132 S. Ct. 2455 (2012).
[8] *See id.* at 2469.
[9] *See* 28 U.S.C. § 2255(b) ("If the court finds that… the sentence imposed was not authorized by law…, the court shall vacate and set the judgment aside and shall… resentence [the prisoner] as may appear appropriate.").

4

1.     **This Court should not dismiss Mr. Adams's *Miller* claim because it relies on a new rule of law that has been made retroactive to his case, which is on collateral review, by the Supreme Court.**

Although the Ninth Circuit has authorized Mr. Adams to file this motion, this Court must dismiss his claim unless it determines that the claim satisfies the criteria for authorization.[10] One of those criteria is that the claim must rely on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court."[11] Because the Supreme Court has made its *Miller* decision retroactive to cases on collateral review, this Court should not dismiss Mr. Adams's claim.

The Supreme Court can make a new rule of constitutional law apply retroactively to cases on collateral review in either of two ways. First, the Court can expressly hold that the new rule applies retroactively.[12] Second, the Court can declare that certain types of rules apply retroactively, and then later articulate a holding that is of the proper type.[13] *Miller* has been made retroactive in the second way.

The Supreme Court has held that Eighth Amendment-based categorical exclusions from certain types of punishment apply retroactively to cases on collateral review.[14] In *Miller* the Supreme Court then said that it was articulating a categorical exclusion for juvenile homicide offenders from the punishment of life in prison without the possibility

---

[10] *See* 28 U.S.C. § 2244(b)(4).

[11] 28 U.S.C. § 2255(h)(2).

[12] *See Tyler v. Cain*, 533 U.S. 656, 663 (2001).

[13] *See id.* at 666, 668–69 (O'Connor, J., concurring).

[14] *See Penry v. Lynaugh*, 492 U.S. 302, 329–30 (1989) (citing *Teague v. Lane*, 489 U.S. 288 (1989)), *overruled on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002).

5

of parole.[15] Thus *Miller* has been made retroactive to cases on collateral review.[16] This Court therefore should not dismiss Mr. Adams's claim.

**2.    The term-of-years sentence imposed here is the functional equivalent of a life sentence because it exceed Mr. Adams's projected life expectancy; thus it violates the Cruel and Unusual Punishments Clause of the Eighth Amendment.**

The holding in *Miller* does not apply solely to sentences denominated "life without parole." Rather, it applies to any sentence that forecloses to a juvenile offender a "meaningful possibility to obtain release based on demonstrated maturity and rehabilitation."[17] This Court should recognize, as the California Supreme Court has recognized, that lengthy sentences that exceed a person's life expectancy are the functional equivalent of a sentence that is formally denominated "life without parole."[18] Here, Mr. Adams's 43-year sentence is the functional equivalent of a sentence of life without parole. In order to "reflect life expectancy of federal criminal defendants more precisely..., life sentences and all sentences above 470 months are now capped at 470 months" by the U.S. Sentencing Commission.[19] Mr. Adams's 516-month (43-year) sentence exceeds this projected life expectancy. It is therefore the functional equivalent of a sentence of life without parole, and was imposed in violation of *Miller*.

---

[15] *See* 132 S. Ct. at 2469; *see also Graham v. Florida*, 130 S. Ct. 2011, 2022–23 (2010) (characterizing the holding as a "categorical challenge to a term-of-years sentence").
[16] *See Tyler*, 533 U.S. at 666.
[17] *Graham*, 130 S. Ct. at 2030 (cited in *Miller*, 132 S. Ct. at 2469).
[18] *See People v. Caballero*, 282 P.3d 291, 295 (Cal. 2012).
[19] *See* U.S. Sentencing Commission, *2011 Sourcebook of Federal Sentencing Statistics*, Appendix A, at 2.

**PRAYER FOR RELIEF**

For the foregoing reasons, Mr. Adams's sentence violates the Eighth Amendment as explained in *Miller*. This Court should therefore vacate his sentence and convene a new sentencing hearing at which the sentencing judge will have unfettered discretion to consider the mitigating circumstances of his youth[20] as a basis for imposing a sentence that carries a meaningful possibility of release.

Respectfully submitted:          June 19, 2013.

JON M. SANDS
Federal Public Defender

*s/Keith J. Hilzendeger*
KEITH J. HILZENDEGER
Research & Writing Specialist
*Attorney for Movant Adams*

---

[20] *See Miller*, 132 S. Ct. at 2463–69.

7

1

**CERTIFICATE OF SERVICE**

2

3          I certify that on June 19, 2013, I caused the foregoing motion to be transmitted to
the Clerk of Court for the United States District Court for the District of Arizona using
4     the CM/ECF system. I further certify that all case participants are registered ECF users
and that service will be accomplished by the CM/ECF system.

5

6      *s/Keith J. Hilzendeger*
KEITH J. HILZENDEGER
7      Research & Writing Specialist
*Attorney for Movant Adams*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT**

7

**FOR THE DISTRICT OF ARIZONA**

8

9  UNITED STATES OF AMERICA,     )   No.  CV 10-458-TUC-AWT
                         )   No.  CR  08-340-TUC-RCC (HCE)

10         Plaintiff/Respondent,   )
                         )   No.  CV 10-473-TUC-AWT

11  vs.                         )   No.  CR 07-1663-TUC-CKJ (HCE)
                         )

12                         )   **ORDER DENYING § 2255 MOTIONS**
   DOMINIC DEAN ADAMS,        )

13                         )
         Defendant/Movant.    )

14                         )
                         )

15  _____)

16
17       Dominic Dean Adams ("Movant"), a prisoner in the United States Penitentiary in

18  Beaumont, Texas, has filed two motions pursuant to 28 U.S.C. § 2255 to vacate, set aside,

19  or correct his sentence.  (CV 10-458, Doc. 7; CV 10-473, Doc. 10.)  These motions are

20  substantially identical, and, for the reasons stated below, both motions are denied.

       Movant has filed a host of additional motions in CV 10-458.   Specifically, Movant

21  has filed two Motions for Leave to Proceed In Forma Pauperis (CV 10-458, Doc. 9 & 10),

22  two Motions for Summary Judgment (CV 10-458, Doc. 12 & 14), an Emergency Request

23  for Transcripts and Other Documents (CV 10-458, Doc. 17), an Ex Parte Application for

24  Pauper Status (Doc. 18), and a Motion for Ruling on the Pleadings (CV 10-458, Doc. 20).

25  Movant's request to proceed in forma pauperis is granted and the other motions are

26  denied.

27
28

## I. Background

On July 29, 2007, Movant committed two murders with a Ruger 9 mm semi-automatic pistol on the Tohono O'odham Indian Nation.  (CR 07-1663, Doc. 64 at 5-6; CR 08-340, Doc. 16 at 5-6.)  Movant was 15 years old at the time of these murders.  (CR 07-1663, Doc. 64 at 5-6; CR 08-340, Doc. 16 at 5-6.)  Movant, at the age of 16, then committed an assault on two correctional officers while in the process of escaping from the Gila County Juvenile Detention Center, where he was incarcerated on the murder charges.  (CR 07-1663, Doc. 64 at 7-8; CR 08-340, Doc. 16 at 7-8.)[1]  Movant was initially charged as a juvenile in connection with the murders and the assaults, but on June 13, 2008, following a four-day evidentiary hearing, the Court ordered Movant transferred to adult court for resolution of the charges.  (CR 07-1663, Doc. 64; CR 08-340, Doc. 16.)[2]

Movant was charged in CR 07-1663 with two counts of murder, in violation of 18 U.S.C. §§ 1153 and 1111.  (CR 07-1663, Doc. 75.)  Movant was charged in CR 08-340 with two counts of forcible assault  committed against a federal detention officer, in violation of 18 U.S.C. § 111.  (CR 08-340, Doc. 26.)  On December 1, 2008, in a single hearing, Movant pled guilty to the charges in both cases pursuant to a plea agreement.  (CR 07-1663, Doc. 76 & 77; CR 08-340, Doc. 27 & 28.)  The plea agreement provided for a stipulated Guidelines range of 28 years (336 months) to 43 years (516 months).  (CR

---

[1]    Movant committed the murder and assault crimes while on both federal juvenile supervision and supervision from the Pima County Superior Court.  (CR 07-1663, Doc. 64 at 8-9; CR 08-340, Doc. 16 at 8-9.)  The federal juvenile supervision resulted from an incident on December 9, 2004, during which Movant shot at an occupied school bus.  (CR 07-1663, Doc. 64 at 8; CR 08-340, Doc. 16 at 8.)  For this conduct, Movant was sentenced to 23 months' imprisonment and 60 months' juvenile supervision.  (CR 07-1663, Doc. 64 at 9; CR 08-340, Doc. 16 at 9.)  While on federal supervision, Movant was found in possession of over 100 pounds of marijuana, for which he was sentenced by the Pima County Superior Court to four months' juvenile detention and 56 months' supervision.  (CR 07-1663, Doc. 64 at 8; CR 08-340, Doc. 16 at 8.)

[2]    The court entered an Order in CR 07-1663 directing that all documents filed in the case prior to June 13, 2008 shall remain sealed.  (CR 07-1663, Doc. 100.)

07-1663, Doc. 77 at ¶ 5; CR 08-340, Doc. 28 at ¶ 5.)  The plea agreement also provided that Movant waived his right to appeal the entry of judgment and sentence as well as "any right to collaterally attack [his] conviction and sentence under [28 U.S.C. § 2255]."  (CR 07-1663, Doc. 77 at ¶ 8; CR 08-340, Doc. 28 at ¶ 8.)  The plea agreement added that "[t]his includes waiving the ability to appeal from the Order dated June 13, 2008, which ordered the defendant to be treated as an adult (not a juvenile) regarding both of these matters."  (CR 07-1663, Doc. 77 at ¶ 8; CR 08-340, Doc. 28 at ¶ 8.)

On May 22, 2009, the district court sentenced Movant in both criminal cases.  (CR 07-1663, Doc. 103 at 33-43; CR 08-340, Doc. 50 at 33-43.)  With respect to the two second-degree murder convictions, Movant was sentenced to concurrent prison terms of 396 months, to be followed by 60 months' supervised release.  (CR 07-1663, Doc. 99.)  With respect to the assault convictions, Movant was sentenced to concurrent prison terms of 120 months, to run consecutively to the prison terms imposed for the murder convictions, and 36 months of supervised release, to run concurrently with the supervised release period imposed for the murder convictions.  (CR 08-340, Doc. 45.)  Movant's total prison sentence was thus 43 years.  (CR 07-1663, Doc. 103 at 40; CR 08-340, Doc. 50 at 40.)  The Judgments in both cases were entered on June 4, 2009.  Movant did not file a notice of appeal.

The Court interprets Movant's Amended § 2255 Motions to raise four primary grounds for relief:

(1)  Defense counsel was ineffective in recommending that Movant, a juvenile, plead guilty when Movant was unable to understand the court proceedings and the terms of the plea agreement.  (CV 10-458, Doc. 7 at 5, 14-15; CV 10-473, Doc. 10 at 5, 14-15);

(2)  Defense counsel was ineffective in misinforming Movant prior to signing the plea agreement that he would receive a 20-28 year total sentence on the charges.  (CV 10-458, Doc. 7 at 14-15; CV 10-473, Doc. 10 at 14-15);

1      (3)  Defense counsel was ineffective in failing to request a transfer hearing from

2  juvenile court to adult court and in failing to request a competency hearing.  (CV 10-458,

3  Doc. 7 at 7, 17-19; CV 10-473, Doc. 10 at 7, 17-19); and

4      (4)  Defense counsel was ineffective in recommending that Movant plead guilty to

5  the assault charges because the individuals he assaulted were not actually federal

6  officials.  (CV 10-458, Doc. 7 at 8, 16-17; CV 10-473, Doc. 10 at 8, 16-17.)

7      Respondent argues that Movant's § 2255 motions were not timely filed and that

8  Movant waived the right to challenge his conviction and sentence in his plea agreement.

9  Respondent further contends that Movant's defense counsel did not provide ineffective

10  assistance because Movant voluntarily and knowingly pleaded guilty, was afforded a

11  hearing regarding the transfer of his cases from juvenile court to adult court, and was

12  properly convicted of assaulting federal officials.

## II. Discussion

**A.**    **Timeliness of the § 2255 Motion**

      **1.**    **One-Year Limitations Period**

16      A collateral attack under § 2255 must be filed within one year from the latest of

17  several possible dates, including the date a judgment of conviction becomes final.  *See* 28

18  U.S.C. § 2255(f)(1). Where a defendant does not file a notice of appeal, as in this case,

19  the limitations period begins to run upon the expiration of the time during which the

20  defendant could have sought review by direct appeal.  *United States v. Schwartz*, 274 F.3d

21  1220, 1223 (9th Cir. 2001).  At the time the Judgments were entered in Movant's cases on

22  June 4, 2009, a defendant had 10 days (excluding Saturdays and Sundays[3]) from the entry

23  of judgment  to file a notice of appeal.  *See* Fed. R. App. P. 4(b) (2009).  Thus, Movant's

24  conviction became final on June 18, 2009, and, absent tolling, the one-year limitations

25  period expired on June 18, 2010.

---

27      [3]    *See* Fed. R. App. P. 26(a)(2).

Movant signed his original § 2255 motions on July 7, 2010 and certified the motions as being provided to prison officials for mailing on July 8, 2010.  (CV 10-458, Doc. 1 at 12; CV 10-473, Doc. 1 at 12.)  Applying the "mailbox rule," the effective filing date of Movant's motions is July 8, 2010.  *See Campbell v. Henry*, 614 F.3d 1056, 1058-59 (9th Cir. 2010) (explaining that a prisoner's pro se habeas petition is "deemed filed when he hands it over to prison authorities for mailing to the relevant court")  (internal quotation marks omitted).  Accordingly, Movant's motions were untimely by twenty days, unless they were subject to tolling.

### 2.    Equitable Tolling

Movant contends that he is entitled to equitable tolling as a result of a prison transfer that occurred shortly before the expiration of the limitations period.  Movant submits that, on May 14, 2010, he was transferred from the U.S. Penitentiary in Tuscon, Arizona, to a transfer center in Oklahoma City, Oklahoma, from where he was then sent to the U.S. Penitentiary in Beaumont, Texas, arriving on May 21, 2010.  (CV 10-458, Doc. 19 at 2.)  Movant attests that the day prior to his transfer from USP Tuscon, he was required to place all of his property, including his legal materials with his § 2255 motion papers, into a box that would be shipped to his ultimate destination.  (CV 10-458, Doc. 19 at 2.)  Movant presents evidence, uncontested by Respondent, that he did not receive these materials at USP Beaumont until June 15, 2010.  (CV 10-458, Doc. 19, Ex. 1.) Movant thus contends that he is entitled to equitable tolling for the 33-day period during which he did not have access to his legal file.

"A § 2255 movant is entitled to equitable tolling 'only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'"  *United States v. Buckles*, 647 F.3d 883, 889 (9th Cir. 2011) (quoting *Holland v. Florida*,  130 S.Ct. 2549, 2562 (2010)).  The Ninth Circuit has expressly held that a *pro se* prisoner's lack of access to his legal materials during a prison transfer or temporary relocation can constitute an "extraordinary circumstance"

that warrants equitable tolling.  *See Espinoza-Matthews v. California*, 432 F.3d 1021,

1027-28 (9th Cir. 2005); *Lott v. Mueller*, 304 F.3d 918, 924-25 (9th Cir. 2002).  Tolling is

warranted in such cases because it is "unrealistic to expect a habeas petitioner to prepare

and file a meaningful petition on his own within the limitations period without access to

his legal file." *Espinoza-Matthews*, 432 F.3d at 1027 (internal quotation marks and

alteration omitted).

Here, Movant was deprived of access to his legal materials for 33 days, eventually

receiving them just three days before the one-year limitations period would have

otherwise expired.  Given that Movant filed his motion less than three weeks after this

date, the Court finds that Movant pursued his rights diligently and that the prison transfer

constituted an "external force" that accounts for the delay in filing.  *Lott*, 304 F.3d at 922.

Movant is therefore entitled to equitable tolling for the 33-day period, and his § 2255

motions are timely.

**B.**     **Ineffective Assistance of Counsel Claims**

    **1.**     **Waiver**

A defendant may waive the statutory right to challenge his sentence under § 2255.

*United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994).  However, an express waiver of

§ 2255 rights does not necessarily preclude a collateral attack "challenging the knowing

and voluntary nature of the plea agreement," or "an ineffective assistance claim

implicating the voluntariness of the waiver itself." *United States v. Jeronimo*, 398 F.3d

1149, 1156 n.4 (9th Cir. 2005), *abrogated on other grounds by United States v. Jacobo

Castillo*, 496 F.3d 947, 957 (9th Cir. 2007) (en banc); *see also United States v. Rahman*,

642 F.3d 1257, 1260 (9th Cir. 2011).

Movant's claims can all be construed as allegations that he received ineffective

assistance of counsel that resulted in a plea agreement that was not entered knowingly and

voluntarily.  Accordingly, notwithstanding the waiver contained in Movant's plea

- 6 -

1   agreement, the Court will treat all of Movant's claims as cognizable on collateral review

2   and address the merits of those claims.

3   ### 2.   Legal Standards

4       Criminal defendants are entitled to the effective assistance of counsel under the

5   Sixth Amendment.  *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To establish

6   ineffective assistance of counsel, a convicted defendant must show (1) "that counsel's

7   representation fell below an objective standard of reasonableness," and (2) "that there is a

8   reasonable probability that, but for counsel's unprofessional errors, the result of the

9   proceeding would have been different."  *Id.* at 687-88, 694.

10       The two-part *Strickland* test "applies to challenges to guilty pleas based on

11   ineffective assistance of counsel."  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  With regard

12   to the first prong of the *Strickland* framework, it is strongly presumed that counsel's

13   performance fell within the "wide range of reasonable professional assistance."

14   *Strickland*, 466 U.S. at 689.  "Where . . . a defendant is represented by counsel during the

15   plea process and enters his plea upon the advice of counsel, the voluntariness of the plea

16   depends on whether counsel's advice was within the range of competence demanded of

17   attorneys in criminal cases."  *Hill*, 474 U.S. at 56 (internal quotation marks omitted).  To

18   satisfy the prejudice prong of *Strickland*, the movant "must show that there is a

19   reasonable probability that, but for counsel's errors, [movant] would not have pleaded

20   guilty and would have insisted on going to trial."  *Id.* at 59.  A claim of ineffective

21   assistance of counsel fails if either prong of the analysis is not met and the movant bears

22   the burden of establishing both prongs.  *Strickland*, 466 U.S. at 700; *United States v.*

23   *Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995).

24   ### 3.   Application

25   #### a.   Movant's Age

26

27

28       - 7 -

Movant contends that, in light of his age, he was incapable of understanding the terms of the plea agreement, and therefore counsel rendered ineffective assistance in recommending that he enter into that agreement.[4]

As an initial matter, the Court notes that Movant does not identify any particular aspect of the plea agreement that he failed to comprehend due to his age. Rather, Movant makes only general assertions concerning his inability to understand the proceedings and the alleged coercion of counsel in convincing him to enter the plea agreement. Such conclusory allegations are insufficient to present a colorable claim of ineffective assistance of counsel. *See Greenway v. Schriro*, 653 F.3d 790, 804 (9th Cir. 2011).

The Court also emphasizes that Judge Roll conducted a four-day evidentiary hearing on the issue of whether Movant should be tried as an adult. This extended hearing featured eight witnesses, including two medical experts put forward by Movant. (CR 07-1663, Docs. 87, 88, 90, 94; CR 08-340, Docs. 33, 34, 36, 40.) In the subsequent order granting the transfer request, the Court summarized the testimony from the hearing relevant to the six "interests of justice" factors considered in this context: (1) Movant's age and social background; (2) the nature of the alleged offenses; (3) the extent and nature of Movant's prior delinquency record; (4) Movant's intellectual development and psychological maturity; (5) the nature of past treatment efforts and Movant's response to such efforts; and (6) the availability of programs designed to treat Movant's behavioral problems. (CR 07-1663, Doc. 64 at 4-12; CR 08-340, Doc. 16 at 4-12.) After summarizing this testimony, the court found that Movant "is of normal intelligence" and that his school difficulties "were more likely the result of absenteeism and suspensions than an inability to perform school work." (CR 07-1663, Doc. 64 at 13; CR 08-340, Doc.

---

[4]    Although Movant frames his claim as one of ineffective assistance of counsel, to the extent that Movant raises a due process claim that his plea was not knowing and voluntary on account of his age, that claim is denied for the same reasons that the ineffective assistance claim is denied.

- 8 -

16 at 13.)  The court also found that "the evidence presented at the hearing conclusively disproves" Movant's claim that his crimes were the product of auditory hallucinations, and that Movant's alternative theories, including post-traumatic stress disorder, bipolar disorder, and fetal alcohol syndrome, likewise failed to explain his actions.  (CR 07-1663, Doc. 64 at 13-14; CR 08-340, Doc. 16 at 13-14.)  Based on the totality of the factors, the Court held that the government had presented clear and convincing evidence that transfer to adult court was warranted.  (CR 07-1663, Doc. 64 at 14; CR 08-340, Doc. 16 at 14.)

Thus, Movant's efforts to now challenge the knowing and voluntary nature of his pleas on account of his age, without any specificity as to how his age acted to his detriment, represent no more than an attempt to relitigate the transfer order.  In light of the Court's extensive investigation into the issue over the course of a four-day hearing, the Court finds ample support for the findings in support of the transfer order.  Finally, the Court notes that at his plea hearing, Movant, who was by then 17 years old, allocuted that he had read the plea agreement, discussed it with counsel, and understood its terms.  (CR 07-1663, Doc. 93 at 27-28; CR 08-340, Doc. 39 at 27-28.)  Such "[s]tatements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea." *United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008)**.**

Given the conclusory nature of Movant's allegations, the findings in support of the transfer order, and Movant's statements at the plea hearing, the Court finds no evidence to support Movant's assertion that he failed to understand the terms of the plea agreement due to his young age, or that counsel rendered ineffective assistance in recommending that he enter into the agreement despite his age.  Indeed, once the Court ruled that Movant would be transferred to adult court, counsel faced limited options in reaching a favorable disposition for Movant under the circumstances.

**b.      Alleged Misrepresentation of Expected Sentence**

Movant asserts that, prior to entering into the plea agreement, counsel informed

- 9 -

him that he would receive a sentence of between 20 and 28 years of imprisonment, not the 43 years that he eventually received.  (CV 10-458, Doc. 7 at 14-15; CV 10-473, Doc. 10 at 14-15.)  This claim simply lacks credibility given that the stipulated Guidelines range in the plea agreement was 28 to 43 years and Movant stated during his plea colloquy that he understood these terms.  (CR 07-1663, Doc. 93 at 16-18; CR 08-340, Doc. 39 at 16-18.)  In fact, during the colloquy, the Court specifically informed Movant, "if I accept the plea agreement, you will go to prison for at least 28 years," and Movant answered that he understood and had no questions about this statement.  (CR 07-1663, Doc. 93 at 16-17; CR 08-340, Doc. 39 at 16-17.)  Movant therefore has not presented a credible, plausible claim that counsel misled him concerning the expected sentence he would receive.

### c.    Alleged Failure to Request Transfer and Competency Hearings

Movant's contention that counsel failed to request a transfer hearing is clearly without merit given that the Court held the previously described four-day evidentiary hearing on whether transfer was appropriate.[5]  Similarly, the record contradicts Movant's claim that counsel failed to request a competency hearing.  In October 2007, defense counsel filed a motion requesting that Movant's competency be evaluated by Bradley Johnson, M.D.  The Court granted the request, and Dr. Johnson, in turn, conducted a psychiatric evaluation of Movant.  In a report dated December 14, 2007, Dr. Johnson concluded that Movant was competent to stand trial.  Thus, the Court rejects Movant's claims that counsel was ineffective in failing to request a transfer or competency hearing.

### d.    Basis for Assault Convictions

---

[5]    To the extent that Movant's claim is that counsel was ineffective in representing Movant *during* the transfer hearing, the record does not support such a claim. In any event, such a claim is foreclosed by Movant's later pleas of guilty in adult court. *See Lambert v. Blodgett*, 393 F.3d 943, 987 (9th Cir. 2004).

Movant's final claim is that counsel was ineffective in allowing him to plead guilty to the assault charges because the victims of the attack were not federal officers; therefore, that his conduct did not fall within 18 U.S.C. § 111. Section 111(a)(1) makes it unlawful to forcibly assault any person designated in 18 U.S.C. § 1114, if that person is assaulted "while engaged in or on account of the performance of official duties." Covered persons under § 1114 include federal officers and employees as well as "any person assisting such an officer or employee in the performance of [official] duties."

At the time of the assaults, Movant was detained at the Gila River Juvenile Detention Center in connection with the federal murder charges pending against him. (CR 07-1663, Doc. 77 at 7; CR 08-340, Doc. 28 at 7.) Although the facility is not a federal facility and the officers Movant assaulted in the course of his escape were not federal employees, Movant was being held pursuant to a lawful federal order under the authority of the United States Attorney General.[6] (CR 07-1663, Doc. 77 at 7; CR 08-340, Doc. 28 at 7.) The Ninth Circuit has yet to address whether such an assault – perpetrated by a prisoner being held on federal charges against a non-federal correctional officer – falls within the scope of § 111(a)(1). However, all of the circuits to address the issue have held in analogous circumstances that such assaults are covered by the statute, even though no federal employees were present at the time of the incident, because correctional officers guarding federal prisoners are "assisting" federal officials in the performance of official duties. *See United States v. Jacquez-Beltran*, 326 F.3d 661, 663 (5th Cir. 2003); *United States v. Murphy*, 35 F.3d 143, 147 (4th Cir. 1994); *United States v. Ama*, 97 F. App'x 900, 902-03 (10th Cir. 2004).

Moreover, regardless of the proper interpretation of the federal statute, Movant's claim is one of ineffective assistance of counsel; thus, this claim must be denied as a

---

[6]     Movant had been transported to the Gila River Juvenile Detention Center by U.S. Marshals on October 3, 2007, with Movant previously having been detained at the Pima County Juvenile Court. (CR 07-1663, Doc. 64 at 7; CR 08-340, Doc. 16 at 7.)

matter of law.  The failure to argue a novel legal proposition, particularly one for which there is contrary authority, simply cannot sustain a claim of ineffective assistance of counsel.  *See Date v. Schriro*, 619 F. Supp. 2d 736, 751 (D. Ariz. 2008) (citing *Smith v. Singletary*, 170 F.3d 1051, 1054 (11th Cir. 1999)).

### 4. Disposition

For the foregoing reasons, the Court denies Movant's claims that he received ineffective assistance of counsel in entering his guilty pleas.  The Court reaches this conclusion without the need for an evidentiary hearing because "the motion and the files and records of the case conclusively show" that Movant is not entitled to relief.[7]  28 U.S.C. § 2255(b).  That is, the Court concludes that Movant's allegations, "when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (internal quotation marks omitted).  Accordingly, Movant's Amended § 2255 Motions are denied.

### III.  Remaining Motions in CV 10-458

In an Order filed on October 20, 2010, the Court denied Movant's request that it order all transcripts and reports to be furnished at government expense, noting that Movant had not sought or been permitted to proceed in forma pauperis ("IFP").  (CV 10-458, Doc. 8.)  On November 8, 2010, Movant filed two identical Motions to Proceed In Forma Pauperis (CV 10-458, Doc. 9 & 10) using the appropriate court form but without providing a certified copy of the inmate's trust account statement for the six preceding months.  *See* 28 U.S.C. § 1915(a)(2).  Because Movant did not submit a certified six-month inmate account statement, these Motions (CV 10-458,  Doc. 9 & 10) are denied.

---

[7]      In this regard, the Court emphasizes the four-day evidentiary hearing already conducted by the Court on the suitability of trying Movant as an adult.

On April 11, 2011, Movant filed an Ex Parte Application for IFP Status (CV 10-458, Doc. 18) and an Emergency Request for Transcripts and Other Documents (CV 10-458, Doc. 17). Movant submitted with his motion for IFP status an application of indigency and a certificate showing the inmate's trust account statement. (CV 10-458, Doc. 18.) This Ex Parte Application for IFP Status (CV 10-458, Doc. 18) is granted.

In his Request for Transcripts (CV 10-458, Doc. 17), Movant requests "transcripts and other documents" that are part of the criminal proceedings in CR 07-1663-TUC-JMR and CR 08-340-TUC-JMR. Movant contends that "several transcripts" are required to prove his claim of ineffective assistance of counsel. A federal prisoner is not afforded an absolute right to any transcripts of his criminal proceedings in order to prepare a § 2255 motion. *See United States v. MacCollom*, 426 U.S. 317, 319 (1976). After a § 2255 motion is filed, however, a transcript may be furnished to a prisoner at government expense if (1) the prisoner is entitled to proceed IFP, and (2) the court certifies that the claim raised in the § 2255 proceeding is not frivolous and the transcript is needed to decide the motion. *See* 28 U.S.C. § 753(f). Movant has been allowed to proceed IFP, but for the reasons described above, the Court declines to certify that the claims in Movant's § 2255 motions are not frivolous and that transcripts are needed to decide the motions. Accordingly, Movant's Request for Transcripts (CV 10-458, Doc. 17) is denied.

On January 10 and 12, 2011, Movant filed two identical Motions for Summary Judgment. (CV 10- 458, Doc. 12 & 14.) Movant contends that Respondent did not timely file its Answer to his Amended § 2255 Motion and the court should issue an order granting him relief in his § 2255 proceedings. On January 12, 2011, the Court granted Respondent an extension of time until February 21, 2011 to file an Answer (CV 10- 458, Doc. 13). Respondent filed its Answer on February 22, 2011 (CV 10- 458, Doc. 16), one day beyond the deadline. Movant has not shown prejudice from this delay, nor is he entitled to relief *per se* as a result of any delay. For the reasons already discussed at

1    length, Movant's Motions for Summary Judgment (CV 10-458,  Doc. 12 & 14) are denied.

2       On March 26, 2012, Movant filed a Motion for Ruling on the Pleadings (CV 10-

3    458, Doc. 20).  This motion raises the same arguments made in Movant's Amended §

4    2255 Motions, and therefore Movant's Motion for Ruling on the Pleadings (CV 10-458,

5    Doc. 20) is denied.

6                **IV.  Certificate of Appealability**

7       A certificate of appealability ("COA") is required to appeal from a final order

8    denying relief in a § 2255 proceeding.  28 U.S.C. § 2253(c)(1)(B).  Where the district

9    court has rejected constitutional claims on the merits, the movant "must demonstrate that

10   reasonable jurists would find the district court's assessment of the constitutional claims

11   debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Here, Movant's

12   claims have been denied on the merits, and the Court concludes that reasonable jurists

13   would not find the Court's conclusions debatable or wrong.

14       Accordingly,

15       **IT IS ORDERED:**

16       1.      Movant's pro se Amended Motions Under 28 U.S.C. § 2255 to Vacate, Set

17   Aside or Correct Sentence by a Person in Federal Custody (CV 10-458-TUC-AWT, Doc.

18   7; CV 10-473-TUC-AWT, Doc. 10) are **DENIED.**

19       2.      Movant's Ex Parte Application for In Forma Pauperis Status (CV 10-458-

20   TUC-AWT, Doc. 18) is **GRANTED**.

21       3.      Movant's Motions for Leave to Proceed In Forma Pauperis (CV 10-458-

22   TUC-AWT, Doc. 9 & 10), Motions for Summary Judgment (CV 10-458-TUC-AWT,

23   Doc. 12 & 14), Emergency Request for Transcripts and Other Documents (CV 10-458-

24   TUC-AWT, Doc. 17), and Motion for Ruling on the Pleadings (CV 10-458-TUC-AWT,

25   Doc. 20) are **DENIED**.

26

27

28                    - 14 -

4.     The Clerk of Court shall enter Judgment accordingly and close Case No. CV 10-458-TUC-AWT and Case No. CV 10-473-TUC-AWT. Further, the Clerk shall enter on the docket and file this Order Denying § 2255 Motions in both cases.

5.     In Case No. CV 10-458-TUC-AWT and Case No. CV 10-473-TUC-AWT, the issuance of certificates of appealability is **DENIED**.

DATED: this 7th day of January, 2013

A. Wallace Tashima
United States Circuit Judge
Sitting by Designation

- 15 -



Office of the Clerk
**United States Court of Appeals for the Ninth Circuit**
Post Office Box 193939
San Francisco, California 94119-3939
415-355-8000

Molly C. Dwyer
Clerk of Court

June 19, 2013

---

No.:          13-72158
Short Title:  Dominic Dean Adams v. USA

---

Dear Petitioner/Counsel

This is to acknowledge receipt of your Application for Permission to File a Second or Successive Habeas Corpus Petition.

All subsequent letters and requests for information regarding this matter will be added to your file to be considered at the same time the cause is brought before the court.

The file number and the title of your case should be shown in the upper right corner of your letter to the clerk's office. All correspondence should be directed to the above address pursuant to Circuit Rule 25-1.