UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DOMINIC DEAN ADAMS,<br><br>Petitioner<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | C.A. No. 13-72158<br><br>D.Ct. No. 08-0340-TUC-RCC<br>D.Ct. No. 07-1663-TUC-CKJ<br><br>**RESPONSE TO APPLICATION FOR AUTHORIZATION TO FILE A SECOND OR SUCCESSIVE MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255** |

The United States of America, by and through its undersigned attorneys, hereby submits its Objection to Application for Authorization to File a Second or Successive Motion to Vacate for the reasons set forth in the accompanying memorandum of points and authorities.

Dominic Dean Adams is a federal prisoner who, pursuant to a written plea agreement, faced a range of sentence of 28 – 43 years for murdering two people when he was 15 years of age and assaulting two federal officers as he escaped from a detention center at 16 years of age. Adams was on absconder status from his Juvenile Delinquent Supervision when he committed these crimes. Adams did not face a mandatory life without parole sentence for crimes he committed under the age of 18 years, nor was he sentenced by a court without the discretion to

impose a range of sentence. Adams was sentenced to 43 years imprisonment. His projected release date is presently April 6, 2045, at which time Adams will be 53 years of age.[1] He can accrue 54 days of "good time" credit per year.

As the United States Supreme Court held in *Miller v. Alabama*, 132 S.Ct.2245, 2460, (2012), "mandatory life without parole for those under 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments' ". As noted in *Miller*, "by requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, the mandatory sentencing schemes" violate the principle of proportionality. *Miller* at 2475. Here, the record demonstrates that no such violation occurred and that the instant facts do not violate the Eighth Amendment. The court considered mitigating circumstances, the characteristics and nature of the crimes committed, as well as the family and home environment. The Court articulated the factors considered in imposing sentence, as set for below. The court had a wide range of sentence and no life term was imposed.

Judge A. Wallace Tashima, Unites States Circuit Judge Sitting by Designation, issued an Order Denying §2255 Motions on January 7, 2013. Thus

---

[1] Bureau of Prisons Inmate Locator, February 13, 2014.

defendant is seeking permission for a successive petition based on *Miller,* which was available for over six months before Judge Tashima ruled.

No error occurred nor is petitioner entitled to relief.

### The Transfer and Change of Plea Hearings

Following a four day evidentiary hearing, Judge Roll issued a 15 page order regarding the transfer of the juvenile to adult court for resolution of all charges. The court also found the government met the burden of proof regarding the violations set forth in the petitions to Revoke Juvenile Delinquency Supervision. The parties engaged in plea negotiation.  On December 1, 2008, a two-count felony Information was filed in CR 07-1663-TUC-JMR, charging Adams with two counts Murder, Second Degree for shooting Dorian Lopez in the face at close range and killing him and shooting Dennis Pablo in the back, killing him. Also that day, a two-count felony information was filed in CR 08-00349-TUC-JMR, charging petitioner with two felony counts of Assault of a Federal Officer.  These charges arise from causing bodily injury to two detention officers employed at the Gila County detention facility where he was housed pursuant to a lawful federal order, during his escape on November 12, 2007. Petitioner entered guilty pleas before Judge Roll to the charges contained in both of the Informations. The written plea provided:

3

>       Pursuant to Rule 11(C)(1)(C), Fed. R. Crim. P., the government and the defendant stipulate and agree to a sentence with a range of 28 years (336 months) to 43 years (516 months) is the appropriate disposition of this matter. The parties agree that the Court may depart from the guideline calculations and/or run consecutive or concurrent in whole or in part to reach a reasonable sentence under 18 U.S.C. § 3553(a) within the stipulated range. The defendant may withdraw from the plea agreement if he receives a sentence in excess of 43 years, the government may withdraw if the defendant receives less than 28 years. Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the government agrees not to file any other charges against Dominic Adams relating to events occurring on July 29, 2007 or November 12-13, 2007.

Plea Agreement at page 3, (Exhibit 1).

## Sentencing and Disposition

The sentencing and disposition hearings were held on May 22, 2009. Before imposing sentence, Judge Roll recited the materials he reviewed, including the combined presentence report, the addendum thereto, and stated:

>    The Court: Counsel, the only thing that I would add in connection with the juvenile matter is that, at my request, Probation contacted the facility that would be the one facility at which the juvenile could be housed in connection with the revocation matter, and I don't think that this differs significantly from what we heard in connection with the transfer hearing, but it was conveyed to me that if the juvenile were to be sent to that particular facility, that in light of the convictions in this particular case and the risk that he would pose, that he would be able to receive counseling in cell but that most services would not be available for him because of the high risk that he would pose to staff and to other juveniles at the facility and that he would be in a special management unit as a result of the convictions in the case.

> Ms. Vietor: I'm sorry, Your Honor. Just to clarify, are we speaking about the facility in Galen, Montana?
>
> The Court: Yes. Yes.

Reporters Transcript, May 22, 2009, 6 – 7, (Exhibit 2).

Judge Roll also stated he read the "very significant number of materials that were submitted" including the dispositional report in the juvenile supervision revocation, the addendum to the probation report regarding victim impact information from the victim detention officers, government's sentencing memorandum, letters submitted by defense counsel, including letters from the petitioner, his stepmother and his mother and victim impact letters. The Court incorporated the transfer hearing order as part of the record. The Court reviewed the petitioner's sentencing memorandum and materials submitted therewith, including photographs, excerpts of the four day transfer hearing, the amicus brief of the American Medical Association submitted in *Roper v Simmons*, No. 03-633, evaluations of the petitioner dated March 14, 2008 by Dr. Sack MD, and the May 16, 2008 neuropsychological evaluation report by Dr. Hermosillo-Romo, Ph.D..

Before imposing sentence, Judge Roll stated:

> There is a plea agreement in this case. The plea agreement provides for a range of 28 to 43 years imprisonment as the total sentence in connection with the two counts of murder in 07-1663 and the two counts of assault on a federal officer in CR-08-340.

Having considered everything in this case, I do accept the plea range. I believe that under 3553 (a) factors that the range is an appropriate range. I believe that the plea agreement is favorable to the defendant because, had the matters proceeded to trial, the defendant realistically was at very great risk of being convicted of two counts of first-degree murder, with life imprisonment as the sentence for that…

Mr. Adams, much has already been discussed in connection with this case and about how you committed the two counts of second-degree murder, to which you pled guilty, on July the 29th of 2007, shooting the victim Dorian Lopez, I believe a 17-year-old minor at the time, in the face at close range when he answered the door of his residence. You used a 9-millimeter handgun, and it was gang activity not on behalf of Dorian Lopez but on your behalf, and you had two companions with you. But there is not a shred of evidence or indication that either of them were in any way involved in actually handling the firearm or being responsible for shooting Dorian Lopez.

After that, as has already been described, there was an individual who was fleeing the area, and you shot that individual in the back, ultimately causing death, and that victim was Dennis Pablo. Those are the two counts of second-degree murder. You threw the murder weapon on a roof. If was recovered and ballistics tests verified that that was the murder weapon.

You were detained at the Pima County Juvenile Court Center, and the poem has already been quoted in part, but it shows really a total indifference to life and even a sense of accomplishment at having killed two individuals and being responsible for the death of two individuals who had done nothing to bring on those consequences.

I believe it was largely as a result of that poem and also a gang-related encounter at Pima County Juvenile Court Center that resulted in your being moved to the Gila County Juvenile Detention Center, and it was on November the 12th of 2007 that you, with another juvenile whom you had recruited, masterminded a successful

escape attempt that involved overpowering two female guards at the facility, Genevive Martinez and Delores Jean Rascon, who are the victims named in the assault on a federal officer counts in CR-08-340.

You handcuffed those individuals and you threatened to bash and/or stomp their heads in with an object and with your feet if they did not cause the system to be overridden so that you could escape, and you did escape, and you were in fact intercepted while apparently being transported back to your residence, and one of the individuals in that vehicle was your brother.

You indicated at the time, "If you don't open these doors, we are going to fucking bash in Martinez's head," speaking to the one guard. The threats again were made while the victims were helpless and handcuffed and on the floor, and it resulted in the override so that you were able to escape.

The backdrop to this is that I had previously sentenced you as a juvenile when you shot at a school bus and narrowly missed the head of the school bus driver, and the shot was fired at a time when the bus was slowing down in order to execute the turn. And there have been many other instances as well of involvement, including your participation in drug trafficking.

Your criminal history of IV includes the discharging a firearm within a school zone and six counts of assault with a deadly weapon. You were 13 years old. You shot a .22 rifle at a school bus occupied by 17 minor students and the driver. The bullet went through the glass door of the bus and lodged near the driver's head.

You offered various explanations, as government's counsel has pointed out, one that the weapon fired accidentally, but there was in fact discussion by you beforehand about doing this and at least one other person present. And later you offered explanations that you carried the rifle as a protection against Bloods and that you fired at the bus to scare your ex-girlfriend, who had either said bad things about your new girlfriend or had flipped you off from the bus before the shot.

7

You also have a conviction for possession of marijuana, more than 4 pounds, for which you were sentenced January 26th of 2007 as a juvenile. You were a passenger in a vehicle transporting five bales of marijuana over 100 pounds.

You also had other arrests that are documented in the presentence report.

I take into consideration everything that was presented. And there is no question that you had a deplorable childhood and that you had parents that neglected you and that were themselves involved in criminal activity and a mother who was involved in drugs.

In looking at the entire picture - - there was testimony regarding the transfer hearing about your mother being concerned that you had participated in the killing of a dog when you were six years old, I believe with other family members.

There were suspensions from school eight times for drugs and/or fights, and in fact you had been suspended from school when you shot at the school bus.

You are a proclaimed and proud member of the Crips Street gang, and in fact that is the explanation for how, on two different occasions, you were involved in very serious criminal activity involving firearms; and in fact the poem that you wrote while at the Pima County Juvenile Court Center describes that.

The medical testimony that was presented regarding the mental health, in looking at what all the evidence was in this case, simply does not support any claim that your involvement in any of these activities, from the school bus shooting to the murder of the two victims to the overpowering of the female guards at the Gila facility, were a result of hallucinations or some other type of commands that you may have received. And in fact, of course, the poem that you wrote at the Pima County Juvenile Court Center undermines any claim that you weren't aware of what you were doing in connection

with the two murders.

> I did consider the possibility of your being ordered to remain in a juvenile facility to the age of 21 and then beginning to serve the sentence of 28 to 43 years imprisonment that you face under the terms of the plea agreement. I gave that serious thought, but based on the history that you have, I think it would be unwise to order any term of juvenile incarceration because I would greatly fear for the other juveniles with whom you were housed, and I would greatly fear for the staff that would be responsible for your housing, and you have certainly shown not just an inclination but an ability to effectuate escape and to obtain that under the most drastic of circumstances and using whatever force might be necessary.

Id. 34 – 39.

## The Sentence Imposed

The Court stated:

> In considering everything in this case, as to CR-07-1663, it is the judgment and sentence of the Court that you be imprisoned for a period of 396 months, that is, 33 years.
>
> As to CR-08-340, it is the judgment and sentence of the Court that you be imprisoned for a period of 120 months, with that term of imprisonment to run consecutive to the sentence imposed in connection with the murder. That is 10 years, and the cumulative sentence is 43 years imprisonment.
>
> **I am not at all unmindful of the significance of sentencing a 17-year-old to 43 years in prison, but if there was ever a case that warranted it, this is that case.**
>
> Insofar as the revocation of the supervised release, for the reasons that I have mentioned and because I believe you pose a tremendous risk to other juveniles with whom you might be housed and to the staff that would be responsible for housing you, I am going

> to find that you violated your supervision as alleged in CR-05-1288 and order that there be an unsuccessful termination of all four counts, with no further term of imprisonment. That results, as a practical matter, in three years less imprisonment than what you might have received as the absolute maximum under the terms of the agreement.
> As to the supervised release terms, it is ordered that, as to the two counts of second-degree murder, you be placed on 60 months supervised release and, as to the two counts of felony assault on a federal officer, you be placed on 36 months of supervision.

(Emphasis added)

Id. 39 – 40.

The supervised release terms were ordered to run concurrently. Conditions of supervised release were ordered, including participation in programs for substance abuse and mental health treatment, abstinence from use of alcohol, and prohibition of gang activity. Petitioner was prohibited from contacting any victim or victim family member. Restitution of $3,100.00 and a $400.00 special assessment were ordered and a fine waived.  The juvenile delinquent supervision in CR 05-01288-TUC-JMR, the bus shooting, was unsuccessfully terminated.

Adams was not sentenced to a mandatory life without parole term. Petitioner cites *People v Caballero*, 282 P3d 291 (Cal. 2012), to support his argument that the 43 year term imposed is life imprisonment.  However, *Caballero* is inapposite on two grounds, the nature of the conviction and length of sentence imposed.

Caballero was sentenced in a nonhomicide offense to a term of 110 years to life for attempted murder, and would be eligible for parole after serving a minimum of 110 years. The California Supreme Court concluded "sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy constitutes cruel and unusual punishment in violation of the Eighth Amendment." *Caballero* at 268. Adams will be 53 years old at his projected release date.

Judge Roll had discretion in imposing sentence and exercised that discretion. He considered the factors identified in *Miller*, including petitioner's background, family and home life, school record, psychological evaluations, medical testimony regarding his mental health, and the four day transfer hearing over which he presided. The court considered Adams the facts of the instant crimes: shooting the victims, throwing the murder weapon on a roof, the "poem", masterminding the escape, recruiting another inmate and overpowering and assaulting two guards. The court considered Adams previous criminal convictions. The record demonstrates the court was aware of the significance of sentencing a 17- year- old to 43 years in prison, "but if there was ever a case that warranted it, this is that case." R.T. 40.

The Supreme Court held the Eighth Amendment forbids mandatory

11

life without parole for those under the age of 18 at the time of their crimes in *Miller*.

Adams was not subject to nor did he receive a mandatory life term without possibility of parole.

## CONCLUSION

There is no colorable constitutional claim presented. Petitioner's Application for Authorization to file a Second or Successive Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 should be denied.

Respectfully submitted this <u>14th</u> day of February, 2014.

<u>/s/ Sandra M. Hansen</u><br>
SANDRA M. HANSEN<br>
Assistant U.S. Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of February, 2014, I electronically filed the Response with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ *Sandra M. Hansen*
SANDRA M. HANSEN
Assistant U.S. Attorney